In the Matter of the Estate of JOHN BYLOW, Also Known as JOHN BELLO, Deceased.

Surrogate's Court, Queens County, December 17, 1934.

*Frank J. Lawkins,* for the petitioner Michael Bylow.

*Ralph G. Albrecht,* for the respondents Amos J. Peaslee and another.

*Abraham M. Metz,* for John Baran.

HETHERINGTON, S. The decedent, a minor, while delivering meats on a bicycle, was struck by a United States army motor truck, operated by an army private on official business, and died from the resulting injuries on February 18, 1932. Investigation by the military authorities disclosed that the accident was entirely the fault of the operator. Immunity of the sovereign for the torts of its agents barred a recovery in the courts by his parents as next of kin. Compensation could only be secured through legislative action. A bill was thereupon introduced in the Congress, appropriating $5,000 for their relief. The accident happened under such circumstances that the Secretary of War felt there was a moral obligation on the government to grant compensation. Fortified with this recommendation and after the House had amended the bill by adding at the end the following, " *Provided,* That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or agents, attorney or attorneys, on account of services rendered in connection with said claim. It shall be unlawful for any agent or agents, attorney or attorneys, to exact, collect, withhold, or receive any sum of the amount appropriated in this Act in excess of 10 per centum thereof on account of services rendered in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000," it passed both houses, and with executive approval became law on June 11, 1934.

The act authorized and directed the Secretary of the Treasury to pay petitioner, as administrator of the decedent, the sum of

$5,000 in full settlement of all claims against the government for the injuries resulting in his death. On July 12, 1934, this court granted an order approving the settlement, removing the restrictions contained in the limited letters of administration heretofore awarded to the petitioner on July 7, 1934, and allowing him to collect the sum so appropriated. Payment was made and out of the sum collected petitioner paid the respondent attorneys $1,500. Thereafter and on October 24, 1934, petitioner instituted this proceeding under section 133 of the Decedent Estate Law to fix and determine the reasonable expenses incurred by him in connection with the aforesaid settlement. Pursuant to order a citation was issued to his wife, one John Baran and his attorneys.

It appears that about six months after the accident the petitioner was introduced to the respondent Baran, who claims that the petitioner engaged him to investigate the circumstances of the accident, and, in return for his services, agreed to pay him at the rate of ten dollars a day and reimburse him for his actual cash expenditures. Baran states that after making a preliminary investigation he reported to the petitioner that he had a just and meritorious claim against the government, and, at his request, undertook to secure a lawyer to represent him. Thereupon, he approached one of the respondent attorneys and requested his firm to represent decedent's next of kin. After discussing the results of his investigation he states counsel declined to accept the case unless he obtained further and more direct evidence. Apparently further and satisfactory investigation was made, for counsel undertook to represent petitioner upon the alleged understanding that they would receive as a fee one-half of the recovery. Between September, 1932, and October, 1934, counsel claims to have rendered legal services which they segregate as follows " (a) consultations and advice respecting criminal proceedings and hearings before the Grand Jury in connection with efforts to prosecute the driver of a truck which had run into and killed the deceased, (b) consultations and advice regarding the possible relationship of the petitioner to, and his interest in any claims or allowances respecting the death of John Bello, deceased, (c) proceedings in connection with the prosecution of a claim against the government of the United States through application for legislation in Congress for compensation respecting John Bello, deceased, and (d) proceedings in connection with the settlement of the estate of John Bello, deceased." In addition to the services rendered, respondents claim to have expended various out of pocket disbursements amounting to $218. In their answer they allege that upon payment of the settlement to the petitioner, they became entitled to the sum

of $2,718 for their services and disbursements as aforesaid. They admit the receipt of the payment of $1,500, and in connection thereto allege that $500 thereof was paid by the petitioner as compensation for services in connection with the application for, and procurement from the United States government, of an allowance for the death of the decedent. With respect to the excess of $1,000 they assert that the petitioner voluntarily and with full knowledge of the provisions of the act paid this sum for services rendered on the application for letters of administration, and for other legal services in connection with the estate, exclusive of services in connection with the allowance and collection of the award made by the government. In further support of this allocation of the amount paid, counsel states in an affidavit that after the collection of the award, petitioner and his wife came to see him " with respect to arrangements for paying our fees and expenses and arranging for the further proceedings to be taken in connection with the administration and settlement of the estate of John Bello, deceased." Petitioner and his wife then advised counsel that they were contemplating going abroad. Counsel then states that in the discussion regarding the fees he " also reminded them of their original offers and promises with respect to fees and discussed with them the fact that there had been a considerable amount of service in addition to the actual prosecution of the claim, and that further services would be required. I told them that if they were going to go away I wanted to be protected in some way and that I thought it was fair that they should leave with me an additional $1,000. This they did." He then states that he gave instructions to one of his associates to take the necessary proceedings to complete the administration of the estate, and while so engaged learned that a controversy had arisen between the petitioner and the respondent Baran. In concluding his affidavit, counsel states: " I consider the entire proceeding more in the nature of an accommodation to Mr. Bello and to Mr. Baran as it is out of my line of practice. I shall gladly take whatever action the court directs. If the court deems it feasible or proper, I will be glad to pay into court any amount in controversy, but I consider it fair, if the court should deem such action proper, that some protection be granted also by the court respecting the additional amount in controversy owed by Mr. Bello to us and that in such event he be directed likewise to pay such amount into court pending any final determination of the rights of the parties."

Petitioner, on the other hand, claims to be unable to speak, read or write our language. Counsel admits that petitioner and his wife were accompanied by an interpreter at the time he had

the foregoing discussion with respect to his fees and the payment thereof. Petitioner further asserts that the payment in question was made at the demand of counsel and in ignorance of the limitation contained in the act with respect to the amount payable to attorneys or agents for services rendered in connection with the claim. He further states that counsel did not inform him of the limitation. Counsel, on the other hand, claims that the provisions of the act as well as other documents prepared by him were fully explained to the petitioner through an interpreter. Petitioner claims that the only services performed by counsel were " bringing the attention of the United States Congress to the aforesaid claim and the preparation and submission of a petition and order granting limited letters of administration to the petitioner and thereafter the preparation of a petition, affidavit and order making the said limited letters of administration full and complete and authorizing the compromise of the claim for Five Thousand ($5,000) Dollars."

While counsel are unable to produce the original retainer, stating it has been lost or mislaid, I am satisfied that the petitioner promised to pay a contingent fee of one-half of whatever sum might be recovered by reason of the negligent killing of the decedent. Such retainer is quite common in personal injury actions. The institution and successful prosecution of such actions generally require careful and detailed preliminary investigation. Such services were necessary here, even though recovery was had through legislative action. Where, as here, the victim dies from his injuries an administrator must be appointed to prosecute the action. The legal service performed in procuring the appointment is necessarily contemplated and included within the terms of the retainer. The fee specified in the retainer must be reasonable, at least as far as it affects interested parties, who have failed to sign it. Except for the limitation contained in the act, the fee arrangement claimed to have been made here does not, because of the amount, warrant the disapproval of the surrogate. The retainer was given nearly two years before the passage of the act. The services performed by counsel in investigating the facts and circumstances of the accident and locating and interviewing witnesses were necessary in order to convince Congress of the merits of the claim, and were no different than those usually rendered in negligence actions prior to trial. It must be assumed that Congress was aware of the preliminary service of counsel. Nevertheless, it deliberately provided that no agent or agents, attorney or attorneys, should exact, collect, withhold or receive any sum of the amount appropriated in excess of ten per centum thereof on account of services rendered in connection with said claim, any contract to the contrary notwithstanding.

Such limitations may be harsh but are frequently made by Congress, and may also be found in the statutes regulating the collection of policies of war risk insurance issued to veterans. An extreme illustration of the extent to which the courts will go in recognizing and enforcing the limitation may be found in *Matter of Shinberg* (238 App. Div. 74). The emphatic language of the statute there considered compelled the court to reach a distasteful result. Here the language is no less emphatic, and similarly precludes the court from sanctioning the receiving of any sum in excess of that permitted by the act. Counsel, however, seeks to justify the receiving of the payment of $1,500 by subdividing the amount paid and allocating certain sums to various items of service. My view is that the various items of service, except possibly " d," must be consolidated and treated as services rendered in the investigation of the accident and securing favorable action by the Congress. For such services counsel is limited to the amount permitted by the act. As to item of service designated " d " I cannot find that counsel has rendered or will be called upon to render any services " in connection with the settlement of the estate." Such proceedings already taken in this court as procuring limited letters of administration, securing the approval of settlement and making petitioner's letters full and complete were necessary and incidental to the collection of the amount appropriated. No additional compensation can be awarded for them. Counsel makes reference to future services to be performed such as " transfer tax and accounting proceedings." Of course, the fund not being subject to tax, no proceedings to assess the same will be required. A formal accounting seems unnecessary in view of the fact that the interested parties are adults. In any event the services have not been rendered, and there is no likelihood that counsel will be asked or required to render them. To permit the retention of the excess amount paid upon counsel's itemization of alleged services would be giving judicial approval, to say the least, to an indirect violation of the statute. While counsel stresses the voluntary value of the payment, I am not satisfied in view of all the circumstances that petitioner made the payment upon the basis alleged by counsel. No itemized bill appears to have been prepared and submitted by counsel to the petitioner at the time of payment. What was done or claimed to have been done was oral and not the subject of any written document. Congress intended to protect the next of kin. The bill would not have become law except for the limitation. The value of the services of counsel was determined by legislative fiat. Counsel must bow to it. These views do not deprive counsel of their out of pocket disbursements which

are uncontested and appear to be reasonable. The act does not forbid their payment. As I construe it, it seeks only to regulate the amount of compensation for services. Accordingly their outlays amounting to $218 will be allowed.

The respondent Baran apparently rendered some services of an investigating nature and should receive some compensation. The court cannot, in view of the language of the act, recognize the agreement claimed to have been made by him with petitioner. While his affidavit submitted in opposition to this application seems to lend color to the view that he expected to look to counsel for payment, I have decided to allow him compensation out of the fund. However, the aggregate compensation payable to him and the attorneys cannot exceed $500. I have, therefore, apportioned the maximum statutory compensation payable out of the fund as follows: $450 to the respondent attorneys, and $50 to respondent Baran, who will also be allowed the sum of $35 for his disbursements. In accordance with these views the respondent attorneys will return to the estate of decedent the excess amount paid them, to wit, $1,050, less their disbursements, however, of $218, and the respondent Baran's compensation and disbursements will be fixed and allowed at $85. Submit decree accordingly on notice.